IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARY KRAMER, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | No.: 3:18-cv-1340 |
| v. | : | |
| | : | |
| MAUCH CHUNK TRUST COMPANY, | : | |
| Defendant. | : | JURY TRIAL DEMANDED |

## COMPLAINT

### I. PRELIMINARY STATEMENT

This is an action for an award of damages, declaratory and injunctive relief, attorneys' fees and other relief on behalf of Plaintiff, Mary Kramer (hereinafter "Plaintiff"). Plaintiff was an employee of Mauch Chunk Trust Company (hereinafter "MCTC") in Jim Thorpe, Pennsylvania, who has been harmed by age- and/or disability-based discrimination and retaliatory practices, as well as other improper conduct by MCTC.

This action is brought under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.*, the Americans with Disabilities Act ("ADA"), as amended, 42 U.S.C. §12101 *et seq.*, and pursuant to state law.

### II. JURISDICTION AND VENUE

1. The jurisdiction and venue of this Court is invoked in this District pursuant to Title 42 U.S.C. § 2000e-5(f), 28 U.S.C. §1331, and 1391, 2201, 2202, 1343 and the claim is substantively based on the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.* and the Americans with Disabilities Act ("ADA"), as amended, 42 U.S.C. §12101 *et seq.*

2. The supplemental jurisdiction of this Court is invoked pursuant to Title 28 U.S.C. §

1367, to consider Plaintiff's claim arising pursuant to state law.

3. Venue is proper in the Middle District of Pennsylvania as some or all of the events complained of herein occurred in Carbon County, Pennsylvania.

4. All conditions precedent to the institution of this suit have been fulfilled.

5. Plaintiff has invoked the procedure set forth in the ADEA and ADA. On or about January 10, 2018, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), which was jointly filed with the Pennsylvania Human Relations Commission ("PHRC"), against MCTC alleging, inter alia, age- and disability-based employment discrimination and retaliation. On April 4, 2018, a Notice of Right to Sue was issued by the EEOC.

6. This action has been filed within ninety (90) days of receipt of said Notice.

### III. PARTIES

7. Plaintiff is a 60-year-old female citizen and resident of the Commonwealth of Pennsylvania with a disability covered by the ADA. Plaintiff at all times relevant herein was employed by MCTC.

8. At all times relevant herein, Plaintiff was a "person" and "employee" as defined by the ADEA, 29 U.S.C. § 630, and is subject to the provisions of said Act.

9. At all times relevant herein, Plaintiff was an "employee" as defined by the ADA, 42 U.S.C. § 12111(4), and is subject to the provisions of this Act.

10. At all times relevant herein, Plaintiff was a "person" as defined the ADA, 42 U.S.C. § 12111(7), and is subject to the provisions of said Act.

11. At all times relevant herein, Plaintiff was "disabled" as defined by the ADA, 42 U.S.C.

§ 12102(1), and is subject to the provisions of said Act.

12. At all times relevant herein, Plaintiff was a "qualified individual" as defined by the ADA, 42 U.S.C. § 12111(8), and is subject to the provisions of said Act.

13. MCTC is a Pennsylvania corporation with a place of business at 1202 North Street, Jim Thorpe, Pennsylvania.

14. At all times relevant herein, MCTC was an "employer" and "person" as defined by the ADEA, 29 U.S.C. § 630, and is subject to the provisions of said Act.

15. At all times relevant herein, MCTC was an "employer" as defined by the ADA, 42 U.S.C. § 12111(5), and is subject to the provisions of said Act.

16. At all times relevant herein, MCTC was a "person" as defined by the ADA, 42 U.S.C. § 12111(7), and is subject to the provisions of said Act.

17. At all times relevant hereto, MCTC acted by and/or failed to act by and through the conduct of its officers, managers, agents and employees, all acting within the scope and course of their employment.

18. MCTC has, acting through its agents, servants and representatives, on more than one occasion, met with Plaintiff, and has heard allegations from Plaintiff of age- and disability-based harassment, age- and disability-based discrimination, and retaliation.

19. At all relevant times herein, MCTC knew, or had reason to know, of the actions and inaction alleged herein and/or has personally participated in some of said actions and is ultimately responsible for same.

20. At all times material hereto, MCTC employed more than twenty employees.

IV. **CAUSES OF ACTION**

21. Plaintiff is a 60-year-old female employee hired by MCTC on or about January 23, 2017 as a trust officer.

22. During Plaintiff's employment with MCTC, Plaintiff was qualified for her position and performed her job duties in a proper and competent manner.

23. At all times relevant hereto, Plaintiff's supervisor was Lee Zink, Wealth Management Division Manager.

24. Prior to Plaintiff's date of hire, MCTC had a Certified Trust and Financial Advisor ("CTFA"), who made investment recommendations and/or decisions for MCTC's trust accounts.

25. The CTFA left MCTC prior to Plaintiff's date of hire, and was not replaced.

26. Plaintiff is not a CTFA, and, while qualified to be a trust officer, was not qualified to make investment recommendations and/or decisions for MCTC trust clients.

27. Following Plaintiff's date of hire, Plaintiff's assistant, Cindy Ocampo ("Ocampo"), would make comments complaining about Plaintiff's computer skills.

28. Ocampo is younger than Plaintiff.

29. Ocampo's comments regarding Plaintiff's computer skills reinforced the false perception that Plaintiff was not up-to-date on technology because of Plaintiff's age.

30. Ocampo frequently met and/or spoke with Lisa Perry ("Perry"), MCTC's Business Banker. Plaintiff believes, and therefore avers, that Ocampo and Perry socialized on a regular basis.

31. Perry also is younger than Plaintiff.

32. Ocampo and Perry told a former employee that Plaintiff was "not competent" to be Zink's replacement.

33. Plaintiff overheard Ocampo and Perry complaining to Zink about her abilities. Following these comments, Zink began to subject Plaintiff to hyper-criticism and hyper-scrutiny.

34. Plaintiff believes, and therefore avers, that Zink showed preference to Ocampo and Perry, and believed the false allegations Ocampo and Perry raised with regard to Plaintiff and her abilities.

35. At all times relevant hereto, Plaintiff had been diagnosed with a medical condition and disability, the identity of which is omitted from this Complaint because of privacy concerns with medical diagnoses, but which was expressly made known to Zink by Plaintiff.

36. Plaintiff's medical condition is a disability as that term is defined by the ADA, as amended by the ADAAA, because it substantially limited her in one or more major life activities, including the pumping and circulating of blood, and breathing. Plaintiff's condition was chronic and long-standing and had required prior treatment.

37. In March 2017, Plaintiff required ADA leave due to her disability, and notified Zink of her medical condition and need for time off.

38. Zink responded that he "felt bad," and told her, "this is just a job."

39. Plaintiff believes, and therefore avers, that Zink regarded and/or perceived her to be disabled as a result of her medical condition.

40. In July 2017, MCTC was audited by the Commonwealth of Pennsylvania Department

of Banking and Securities.

41. In June 2017, prior to the start of the audit, Zink met with Plaintiff and told her he needed to "groom" her regarding how to respond to the auditors. Zink told Plaintiff that if anyone found out that he was making investment recommendations and/or decisions for both MCTC's individual clients and trust clients, he would "lose every license" he has.

42. Zink stated to Plaintiff that if she was not comfortable with being "groomed" to answer the auditor's questions, she should "work from another office that week." Plaintiff did not respond to Zink.

43. The audit began on or about July 17, 2017, at which time, Zink informed the auditors that any and all questions should be directed to him or to Ocampo.

44. Zink reiterated that instruction (to direct all questions to him or Ocampo) every day.

45. As part of the audit, MCTC was asked to provide a Trust Officer's Questionnaire. Zink asked Plaintiff to sign it. Plaintiff told Zink that to the extent there was no language indicating that she was making investment recommendations and/or decisions, she would sign it. Zink ultimately took it back without Plaintiff's signature.

46. Plaintiff was to have an audit exit interview with Zink, two auditors, and Patrick H. Reilly (Bank President), on July 21, 2017.

47. In the week leading up to the audit exit interview, Zink had been particularly critical of Plaintiff and had asked her to return house keys, garage door openers, and files to the vault lock box.

48. On July 20, 2017, the day before Plaintiff was to have her audit exit interview, Zink

called her to meet with him. He told her that she was "not right" for the position, that he was "thankful" for all she did, but that he did not see that she could continue in her role as she was "not a good fit."

49. MCTC's termination was manufactured and pretextual in order to conceal its age- or disability-based animus for discrimination and to retaliate against Plaintiff for objecting to Zink's instruction that she lie to the auditors.

50. Plaintiff was treated in a different and disparate manner with regard to discipline and workplace standards than younger and/or non-disabled employees.

51. Plaintiff was treated in a different and disparate manner because the word of younger and/or non-disabled employees was credited over hers.

52. Plaintiff's age was a determinative factor in MCTC's decision to terminate her employment.

53. Plaintiff believes and therefore avers that the termination of her employment is a violation of the ADA due to her disability and/or the aforementioned conduct and/or due to being perceived as or regarded as disabled.

54. As a direct result of MCTC's conduct, Plaintiff has been irrevocably damaged.

55. As a direct result of MCTC's above-stated conduct, Plaintiff has suffered ongoing back-pay and front-pay losses.

56. As a direct result of MCTC's above-stated conduct, Plaintiff has suffered and continues to suffer emotional, psychological, and physical distress and humiliation.

57. As a direct result of MCTC's above-stated conduct, Plaintiff's career, professional and job opportunities have been impaired and damaged, and she has suffered a loss of

earnings and earning capacity.

## COUNT I
## PLAINTIFF v. MCTC
## <u>VIOLATION OF THE ADA</u>

58. Paragraphs 1 through 57, inclusive, are incorporated by reference as if fully set forth at length herein.

59. At all times relevant herein, Plaintiff was disabled, regarded as and/or perceived as disabled by MCTC.

60. Plaintiff was able to perform all of the essential functions of her position with or without accommodation.

61. By reason of the conduct set forth above, MCTC intentionally, knowingly, and purposefully violated the ADA by invidiously discriminating against the qualified Plaintiff who had a disability.

62. By its actions and inactions through its agents, servants, and representatives, MCTC created, maintained, and permitted to be maintained a work environment, which was hostile to persons such as Plaintiff who have a record of or are perceived as having a disability.

63. As a direct result of Plaintiff's disability and/or request for accommodation, MCTC terminated Plaintiff's employment.

64. MCTC's aforesaid actions were outrageous, egregious, malicious, intentional, willful, wanton, and in reckless disregard of Plaintiff's rights.

## COUNT II
## PLAINTIFF v. MCTC
## RETALIATION UNDER THE ADA

65. Paragraphs 1 through 64, inclusive, are incorporated by reference as if fully set forth at length herein.

66. By the acts complained of, MCTC has retaliated against Plaintiff for exercising her rights under the ADA, namely requesting and/or using leave or a reasonable accommodation, in violation of the ADA.

67. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of MCTC's retaliatory practices unless and until this Court grants relief.

## COUNT III
## PLAINTIFF v. MCTC
## AGE DISCRIMINATION AND RETALIATION IN VIOLATION OF THE ADEA

68. Paragraphs 1 through 67 inclusive, are incorporated by reference as if fully set forth at length herein.

69. Solely because of Plaintiff's age, Plaintiff was treated disparately and denied the opportunity to continue in her employment with MCTC and retaliated against for "protected conduct" under the ADEA.

70. The foregoing acts of MCTC constitute unlawful discrimination against Plaintiff in violation of the ADEA.

71. The action of MCTC is without reason or basis and is so arbitrary, capricious, and unfounded that Plaintiff is thereby denied due process of law.

72. Plaintiff has no adequate remedy at law.

73. As a direct result of MCTC's willful and unlawful actions in treating Plaintiff in a discriminatory and retaliatory manner solely because of her age, in violation of the ADEA, Plaintiff has sustained loss of earnings, and benefits, plus loss of future earning power, plus back pay, front pay and interest due thereon.

## COUNT IV
## PLAINTIFF v. MCTC
## WRONGFUL DISCHARGE

74. Paragraphs 1 through 73, inclusive, are incorporated by reference as if fully set forth at length herein.

75. Plaintiff believes that Zink's statements that she was "not right" for the position and that she was "not a good fit," covered up retaliatory animus due to Plaintiff's objection to lying to the auditors from the Commonwealth of Pennsylvania Department of Banking and Securities.

76. In June 2017, prior to the start of the audit, Zink met with Plaintiff and told her he needed to "groom" her regarding how to respond to the auditors. Zink told Plaintiff that if anyone found out that he was making investment recommendations and/or decisions for both MCTC's individual clients and trust clients, he would "lose every license" he has.

77. Zink stated to Plaintiff that if she was not comfortable with being "groomed" to answer the auditor's questions, she should "work from another office that week." Plaintiff did not respond to Zink.

78. The audit began on or about July 17, 2017, at which time, Zink informed the auditors that any and all questions should be directed to him or to Ocampo.

79. Zink reiterated that instruction (to direct all questions to him or Ocampo) every day.

80. As part of the audit, MCTC was asked to provide a Trust Officer's Questionnaire. Zink asked Plaintiff to sign it. Plaintiff told Zink that to the extent there was no language indicating that she was making investment recommendations and/or decisions, she would sign it. Zink ultimately took it back without Plaintiff's signature.

81. Plaintiff was to have an audit exit interview with Zink, two auditors, and Patrick H. Reilly (Bank President), on July 21, 2017.

82. In the week leading up to the audit exit interview, Zink had been particularly critical of Plaintiff and had asked her to return house keys, garage door openers, and files to the vault lock box.

83. On July 20, 2017, the day before Plaintiff was to have her audit exit interview, Zink called her to meet him. He told her that she was "not right" for the position, that he was "thankful" for all she did, but that he did not see that she could continue in her role as she was "not a good fit."

84. Plaintiff believes, and therefore avers, that MCTC's actions in terminating her were in violation of the public policy of the Commonwealth of Pennsylvania.

85. Plaintiff believes, and therefore avers, that pursuant to the public policy of the Commonwealth of Pennsylvania, employees of corporations which the Department of Banking and Securities is authorized to examine must be truthful in response to investigations by the Department of Banking and Securities. See Department of Banking and Securities Code, 71 P.S. § 733-401(f) and 71 P.S. § 733-1104; Banking Code of 1965, 7 P.S. § 101, et seq.; Pennsylvania Securities Act of 1972, 70 P.S. § 1-

404, *et seq*.; and generally, 18 Pa.C.S. §4904.

86. Plaintiff believes, and therefore avers, that Zink was angered by her objection to being "groomed" to respond to the auditors based on his fear that if anyone found out that he was making investment recommendations and/or decisions for both MCTC's individual clients and trust clients, he would "lose every license" he has, and targeted Plaintiff in retaliation and to prevent Plaintiff from reporting his actions to the auditors the following day.

87. As a result of MCTC's willful and unlawful actions, Plaintiff has sustained severe emotional distress, loss of earnings, plus the failure of the aforementioned benefits, plus loss of future earning power, plus back pay, front pay, and interest due thereon.

## STATEMENT OF FACTS JUSTIFYING THE IMPOSITION OF PUNITIVE (ADA)/LIQUIDATED (ADEA) DAMAGES

88. Paragraphs 1 through 87 inclusive, are incorporated by reference as if fully set forth at length herein.

89. At all times relevant hereto, MCTC knew or should have known of the pattern of conduct in which its agents, servants, and representatives had engaged and in which they continued to engage.

90. At all times relevant hereto, MCTC knew or should have known that the aforesaid pattern of conduct was in violation of law and MCTC's stated policies and terms of employment.

91. Despite such knowledge, MCTC failed to adequately investigate, discipline, or discharge its agents, servants, and representatives who discriminated against Plaintiff by reason of her age or disability.

92. MCTC failed and refused to properly protect and support Plaintiff and in fact subjected or permitted her to be subjected to age- or disability-based discrimination and retaliation.

93. At all times relevant hereto, MCTC acted willfully, wantonly, recklessly, maliciously, and with an outrageous disregard and indifference to the rights, safety, and well-being of Plaintiff and other employees similarly situated; by intentionally choosing to apply disciplinary standards for termination and conduct to Plaintiff, which it did not apply to younger and/or non-disabled employees; and/or intentionally deciding to terminate Plaintiff for the pretextual reason of being "not right," and "not a good fit," MCTC exhibited both willfulness and reckless disregard of Plaintiff's rights in the workplace.

94. Plaintiff therefore demands punitive damages under the ADA.

95. Plaintiff therefore demands liquidated damages under the ADEA.

## V. **PRAYER FOR RELIEF**

96. Paragraphs 1 through 95 inclusive, are incorporated by reference as if fully set forth at length herein.

WHEREFORE, Plaintiff requests this Court to enter judgment in her favor and against MCTC and requests that this Court:

(a) Exercise jurisdiction over her claims;

(b) Award traditional tort remedies such as compensatory damages, pain and suffering, physical and emotional distress, economic loss, time loss, and severe emotional trauma under the ADA;

(c) Issue declaratory and injunctive relief declaring the above-described practices to be unlawful, and enjoining their past and continued effects;

(d) Order MCTC compensate Plaintiff with a rate of pay and other benefits and emoluments to employment to which she would have been entitled had she not been subject to unlawful discrimination and/or retaliation;

(e) Order MCTC compensate Plaintiff with an award of front pay, if appropriate;

(f) Order MCTC compensate Plaintiff for the wages and other benefits and emoluments of employment lost, because of their unlawful conducts;

(g) Order MCTC pay to Plaintiff compensatory damages for future pecuniary losses, pain, suffering, inconvenience, mental anguish, loss of employment of life and other non-pecuniary losses as allowable under ADA;

(h) Order MCTC pay to Plaintiff pre- and post-judgment interest, costs of suit and attorney and expert witness fees as allowed by law; and

(i) The Court award such other relief as is deemed just and proper.

## VI. JURY DEMAND

Plaintiff demands trial by jury.

HAHALIS & KOUNOUPIS, P.C.

By: _____
GEORGE S. KOUNOUPIS, ESQUIRE
20 East Broad Street
Bethlehem, PA  18018
(610) 865-2608
Attorneys for Plaintiff

Dated:  July 3, 2018