**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MARY KRAMER,** | : | |
| **Plaintiff** | : | **CIVIL ACTION NO. 3:18-1340** |
| **v.** | : | **JUDGE MANNION** |
| **MAUCH CHUNK TRUST COMPANY,** | : | |
| | : | |
| **Defendant** | | |

## <u>MEMORANDUM</u>

Pending before the court, in this employment, age and disability discrimination action filed by plaintiff Mary Kramer, is a motion to dismiss the amended complaint pursuant to Fed.R.Civ.P. 12(b)(6) filed by her former employer, defendant Mauch Chunk Trust Company ("MCTC"). (Doc. 9). Based upon the court's review of the motion and related materials, the defendant's motion will be **GRANTED IN PART** and, **DENIED IN PART** with respect to plaintiff's claims related to her termination. The plaintiff's disability discrimination claim will proceed. The plaintiff's age discrimination claim will be dismissed. The plaintiff's common law wrongful discharge claim will be dismissed.

## I.    BACKGROUND

The plaintiff has brought the instant action alleging discrimination and retaliation under the Age Discrimination in Employment Act, ("ADEA"), 29 U.S.C. §621, *et seq.*, and the Americans with Disabilities Amendments Act,

("ADAAA"), [42 U.S.C. §12112](). She also brought a Pennsylvania common law claim of wrongful discharge. She filed her original complaint on July 3, 2018. (Doc. 1).

After being served, the defendant filed a Rule 12(b)(6) motion to dismiss for failure to state a claim. (Doc. 5).

Plaintiff then filed an amended complaint on October 25, 2018, (Doc.7), the operative pleading for this case. In Count I,  plaintiff asserts a claim under the ADAAA alleging that defendant discriminated against her based on her unidentified disability of which she made her supervisor, Lee Zink, aware she had. She also alleges that Zink regarded her as disabled due to her medical conditions. In Count II, plaintiff raises an age discrimination claim under the ADEA. In Count III, plaintiff raises a common law wrongful discharge claim alleging that her termination was in violation of Pennsylvania public policy.

As relief, plaintiff seeks compensatory and punitive damages as well as front pay and back pay. Plaintiff also seeks declaratory and injunctive relief declaring that the alleged conduct of defendant to be unlawful and enjoining its "past and continued effects."

On November 8, 2018, defendant filed a motion to dismiss the amended complaint pursuant to [Fed.R.Civ.P. 12(b)(6)]() seeking the dismissal of all claims. (Doc. 9). Defendant simultaneously filed its brief in support of its motion. (Doc. 10). On November 23, 2018, plaintiff filed her brief in opposition. (Doc. 11). Defendant filed a reply brief on December 7, 2018. (Doc. 12).

This court's jurisdiction over the plaintiff's federal claims is based on [28 U.S.C. §1331](). The court can exercise supplemental jurisdiction over plaintiff's state law claim under [28 U.S.C. §1337]().

## II.   DISCUSSION

According to the amended complaint, plaintiff was terminated by defendant based on her age in violation of the ADEA and based on her actual and perceived disability in violation of the ADAAA.[1] During her employment with defendant, plaintiff alleges that she was subjected to discriminatory and disparate treatment by defendant's employees based on her age and disability. Plaintiff, who was 60 years old, also alleges that after defendant hired her on January 23, 2017 as a Trust Officer, it retaliated against her for failing to agree to answer questions from state bank auditors as Zink suggested and, for failing to agree not to report Zink's conflict of interest and unethical conduct to state regulators regarding his investment recommendations and decisions for defendant. In particular, plaintiff alleges that in July 2017, defendant was audited by the Commonwealth of Pennsylvania Department of Banking and Securities, and that before the audit

---

[1]Since both parties recognize the correct standard of review applicable to a motion to dismiss under [Fed.R.Civ.P. 12(b)(6)](), the court will not repeat it. Suffice to say that the facts alleged in plaintiff's amended complaint must be accepted as true in considering the defendant's motion to dismiss. *See* [Dieffenbach v. Dept. of Revenue, 490 Fed.Appx. 433, 435 (3d Cir. 2012)](); [Evancho v. Evans, 423 F.3d 347, 350 (3d Cir. 2005)]().
Nor does the court fully repeat the allegations stated in plaintiff's amended complaint.

began, Zink met with her and told her he needed to "groom" her regarding how to respond to the auditors. She also alleges that Zink told her that if anyone found out that he was making investment recommendations and decisions for both defendant's individual and trust clients, he would "lose every license" he has. Plaintiff avers that Zink told her that if she was not comfortable being "groomed" to answer the auditors' questions, she should "work from another office that week." Plaintiff then states that she did not respond to Zink. Subsequently, plaintiff avers that Zink directed the auditors away from her because he feared that she would disclose his unethical investment decisions and recommendations on behalf of defendant.

On July 20, 2017, the day before plaintiff was scheduled to have an exit interview with the state auditors, Zink informed her that she was terminated because she was "not right" for the job and was "not a good fit" despite the fact that she was not afforded any prior notice or discipline, no investigation, no opportunity to challenge the reasons for her termination, and no exit interview with defendant's Human Resources Department.

The court will first discuss plaintiff's ADAAA discrimination claim.


### A. ADAAA CLAIM

Plaintiff claims defendant violated the ADAAA since she was discriminated against and terminated due to an actual or perceived disability. She alleges that she was "treated in a different and disparate manner with regard to discipline and workplace standards than . . . non-disabled

4

employees."

The ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. §12112(a). To establish a prima facie case of disability discrimination under the statute, the plaintiff must show: "(1) [s]he is a disabled person within the meaning of the ADA; (2) [s]he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) [s]he has suffered an otherwise adverse employment decision as a result of discrimination." Taylor v. Phoenixville School Dist., 184 F.3d 296, 306 (3d Cir. 1999) (citing Gaul v. Lucent Technologies, 134 F.3d 576, 580 (3d Cir. 1998)). The ADA defines an "individual with a disability" as a person who has: "(a) a physical or mental impairment that substantially limits one or more major life activities of such individual; (b) a record of such impairment; or (c) being regarded as having such an impairment." 42 U.S.C. §12102(1).

Thus, to establish a "disability" under the ADA, plaintiff must prove that she is substantially limited in performing a major life activity. *See* 42 U.S.C. §12102. As noted, the ADAAA expanded the scope of disability and construed the definition of disability in favor of broad coverage. Nonetheless, the ADAAA's definition of "disability" still remains as "a physical or mental impairment that substantially limits one or more major life activities of such

individual." 42 U.S.C. §12102(1). "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. §12102(2)(A). "The determination of whether an individual is substantially limited in a major life activity must be made on a case by case basis." Albertson's, Inc. v. Kirkingburg, 527 U.S. 555, 566, 119 S.Ct. 2162 (1999) (citation omitted).

Further, with respect to the "'physical or mental impairment' prong of the definition of a disability, EEOC regulations clarified that 'the determination of whether an impairment substantially limits a major life activity requires an individualized assessment' and 'should require a degree of functional limitation that is lower than the standard for 'substantially limits' applied prior to the ADAAA." Riley v. St. Mary Medical Center, 2014 WL 220734729, *2 (E.D.Pa. May 28, 2014) (citations omitted). However, "[n]ot every impairment will constitute a disability" within the meaning of the ADA. Koller v. Riley Riper Hollin & Colagreco, 850 F.Supp. 2d 502, 513 (E.D.Pa. 2012). Under the ADAAA, the qualifying impairment must still create an "important" limitation. *Id*.

"To determine whether [plaintiff] is disabled under Subsection (A), we 'must first identify the specific life activities that [plaintiff] claims are affected and determine whether those activities are 'major life activities' under the ADA, and then must evaluate whether [plaintiff's] impairment substantially

6

limits those major life activities." <u>Parrotta v. PECO Energy Company</u>, 363 F.Supp.3d 577, 590-91 (E.D.Pa. 2019) (citation omitted). The court "measure[s] disability at the time the adverse action occurred", *id*. at 591, i.e., when plaintiff was terminated from her position.

Additionally, plaintiff alleges that defendant regarded her as being disabled. As the court in <u>Walker v. U.S. Secretary of the Air Force</u>, 7 F.Supp.3d 438, 454-55 (D.N.J. 2014), explained:

> To be "disabled" under the "regarded as" prong of the ADA's disability definition, the plaintiff must
>
>> ha[ve] a physical or mental impairment that does not substantially limit major life activities but is treated by a covered entity as constituting such limitation; Ha[ve] a physical or mental impairment that substantially limits major life activities only as a result of the attitude of others toward such impairment; or Ha[ve] none of the impairments [covered by the ADA] but is treated by a covered entity as having a substantially limiting impairment.
>
> <u>Buskirk v. Apollo</u> Metals, 307 F.3d 160, 166 (3d Cir. 2002). The "perceived disability must ... substantially limit a 'major life activity.'" <u>Eshelman</u>, 554 F.3d at 434 (quoting <u>Sutton v. United Air Lines, Inc.</u>, 527 U.S. 471, 490, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999)). The regarded-as analysis "focuses not on [plaintiff] and his actual abilities, but rather on the reactions and perceptions of the persons interacting or working with him." <u>Kelly v. Drexel Univ.</u>, 94 F.3d 102, 108–09 (3d Cir. 1996).

Further, "the mere fact that an employer is aware of an employee's impairment is insufficient to demonstrate either that the employer regarded the employee as disabled or that that perception caused the adverse employment action." <u>Kelly</u>, 94 F.3d at 109. "[N]or does the mere suggestion

that Plaintiff take leave" create an inference of discrimination. <u>Drummer v. Trustees of University of Pennsylvania</u>, 286 F.Supp.3d 674, 683 (E.D.Pa. 2017). Moreover,

> Use of the word "disability" is also insufficient to establish that the employee was regarded as disabled. "It is not enough to show that defendants regarded her as 'severely injured' or 'impaired' or even 'disabled,' in the colloquial sense .... something more is required under the ADA, i.e., that plaintiff show that she was regarded as having a disability substantially limiting one or more major life activities." <u>Hoskins v. Oakland Cnty. Sheriff's Dep't</u>, 44 F.Supp.2d 882, 891 (E.D.Mich. 1999); *see also* <u>Haley v. Cmty. Mercy Health Partners</u>, Civ. 11–232, 2013 WL 322493, at *11 (S.D.Ohio Jan. 28, 2013) (disability under the ADA "is a legal definition quite distinct from the colloquial meaning of 'disabled'").

<u>Walker</u>, 7 F.Supp.3d at 455.

Here, the plaintiff's claim of disability discrimination in her amended complaint is based on both an actual disability and a perceived disability. Specifically, plaintiff alleges that she was disabled but does not identify her disability, and she alleges that she was "regarded-as" disabled by Zink. Plaintiff alleges that her undisclosed disability substantially limits her in the following life activities, "the pumping and circulating of blood and breathing", which causes "dizziness, chest pain, weakness, exhaustion and fatigue." Plaintiff also alleges that her condition is chronic and long-standing, and has required prior treatment, and that when it is active, it substantially limits the major life activities of "thinking, breathing, standing, and walking." Further, plaintiff alleges that in March 2017, she needed two days of ADA leave due to her disability, and that she notified Zink of her medical condition and the

need for time off. She also alleges that Zink and two other employees of defendant, her assistant, Ocampo, and Perry, indicated to her that she could not ask for extended time off, even with her medical condition, and that there would be negative repercussions if she was absent for more than a few days. As such, plaintiff avers that she was pressured to return to work. Further, plaintiff alleges that since Zink observed and was aware of her symptoms, he "regarded and/or perceived her to be disabled" due to her medical condition.

Thus, plaintiff alleges that defendant's "termination was manufactured and pretextual in order to conceal its age- or disability-based animus of discrimination and to retaliate against [her] for objecting to Zink's instruction that she lie to the auditors and to specifically cover up and prevent an investigation or further action by the same auditors as to any activities of Zink." She alleges that she was "treated in a different and disparate manner with regard to discipline and workplace standards than younger and/or non-disabled employees."

Defendant argues that it is entitled to dismissal of plaintiff's ADAAA claim since she fails to allege sufficient facts regarding the first and third requisite elements, i.e., that plaintiff is not a disabled person under the ADAAA, and that she cannot establish her termination was due to a disability.

Specifically, defendant argues that plaintiff has failed to allege sufficient facts to show that she meets the definition of "disabled" under the ADAAA, and that her sparse allegations are insufficient to show that she was substantially limited in any major life activity. Defendant also argues that

9

simply parroting the regulations as to how she is substantially limited in major life activities is not sufficient to overcome its motion to dismiss without also alleging facts to provide further substantive content to show that she was substantially limited in a major life activity. Thus, defendant contends that although plaintiff is not required to state what her disability is, she is required to "allege sufficient facts from which the court can determine whether her impairment qualifies as a 'disability' under the ADA." (Doc. 10 at 13) (citing D'amico v. Mogel, Speidel, Bobb & Kershner, 2016 WL 5912811, *3 (E.D.Pa. Oct. 11, 2016)).

Defendant also argues that plaintiff fails to allege facts showing that she was terminated due to her unidentified disability, and that there are insufficient facts to show causation.

No doubt that "[w]ithout even a short and plain statement of the impact the impairment has on at least one major life activity, [plaintiff's claim of a disability under the ADA] is merely a bald assertion or a vague and conclusory allegation." Heard v. St. Luke's Hosp., 2009 WL 3081513, at *3 (E.D.Pa. Sept. 28, 2009). *See also* Amiot v. Kemper Ins. Co., 122 Fed.Appx. 577, 580 (3d Cir. 2004) (Third Circuit held that the complaint's allegations did not establish that plaintiff "had an impairment which substantially limited a major life activity"). However, the Third Circuit has held that "a complaint need not establish a prima facie case in order to survive a motion to dismiss." Connelly v. Lane Const. Corp., 809 F.3d 780, 788 (3d Cir. 2016). Rather, the plaintiff must set forth sufficient factual allegations to raise a reasonable expectation

that discovery will reveal evidence of her claims.

Based upon the above detailed allegations, at this stage of the litigation, the court finds that plaintiff has alleged sufficient facts to show that her medical impairment substantially limits her in major life activities, that she has a record of her impairment, and that it qualifies as a disability under the ADAAA. The court also finds, at this stage of the litigation that plaintiff has sufficiently, although barely, alleged that Zink regarded her as having such an impairment. During discovery, defendant will have the opportunity to obtain more information, including medical records, about plaintiff's unidentified disability as well as the limitations it causes plaintiff and whether her disability substantially limits a major life activity. Defendant can then reassert its contention that plaintiff does not have a qualifying disability by filing a summary judgment motion, if appropriate.

Further, plaintiff has adequately alleged that she suffered an adverse employment decision, i.e., her termination, as a result of discrimination due to her disability. *See* Drummer, 286 F.Supp.3d at 683 (Plaintiff must allege "sufficient facts to suggest a causal nexus between his disability and his termination."). During discovery, defendant can obtain additional facts and evidence as to how its alleged actions were motivated by plaintiff's disability and, how non-disabled employees were allegedly treated differently than plaintiff due to her disability.

Thus, the court will deny defendant's motion to dismiss plaintiff's disability discrimination claim in Count I of her amended complaint since her

11

allegations establish a prima facie case under the ADAAA.

### B. ADEA CLAIM

Defendant also moves to dismiss plaintiff's ADEA claim because it contends that plaintiff has failed to allege that its actions in terminating her were taken because of her age. Plaintiff alleges that Ocampo and Perry were biased against her due to her age and that they complained about her to Zink. She also alleges that Zink discriminated against her by telling her to focus on learning the defendant's computer system. Plaintiff claims that Zink's statement "demonstrated [his] stereotyping prejudice that a 60-year-old woman could not or would not learn computer skills."

Under the ADEA, employers are prohibited from "discharg[ing] any individual or otherwise discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. §623(a)(1). "To establish a prima facie case of age discrimination, a plaintiff must demonstrate that (1) [she] is forty years of age or older; (2) the defendant took an adverse employment action against [her]; (3) [she] was qualified for the position in question; and (4) [she] was ultimately replaced by another employee who was sufficiently younger to support an inference of discriminatory animus." Burton v. Teleflex Inc., 707 F.3d 417, 426 (3d Cir. 2013). "The requirement that a plaintiff establish a prima facie case of discrimination 'is not intended to be onerous.'" Andersen v. Mack Trucks, Inc., 118 F.Supp.3d 723, 738 (E.D.Pa. 2015) (citation

12

omitted).

Thus, "[t]o succeed on an ADEA claim, a plaintiff must establish, by a preponderance of the evidence, that age was the 'but-for' cause of the adverse employment action." Howell v. Millersville University of Pennsylvania, 283 F.Supp.3d 309, 322 (E.D.Pa. 2017) (citing Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 177-78, 129 S.Ct. 2343 (2009)). It is not enough for the plaintiff to show that her age was a factor that motivated the employer's action, rather she must point to evidence that could support an inference that her age had a "determinative influence" on the decision. Goss, 557 U.S. at 176. This burden remains squarely with the plaintiff, who may prove her claims through direct or circumstantial evidence. *Id.* at 177. Thus, following Goss, to prove a disparate-treatment discrimination claim under the ADEA, "the evidence must be a sufficient basis for a reasonable jury to conclude that age was the determinative, but-for cause of the employee's termination." Palmer v. Britton Industries, Inc., 662 Fed.App'x 147, 151 (3d Cir. 2016); *see also* Terrell v. Main Line Health, Inc., 320 F.Supp.3d 644, 656 (E.D.Pa. 2018).

Plaintiff relies on indirect evidence regarding her allegation of age discrimination by the defendant. Plaintiff infers that Zink was finding fault with her job performance due to her age. Plaintiff states that Zink, as her supervisor, was the decision-maker, and that he had discriminatory animus based on her age when he terminated her. Plaintiff contends that she "has pleaded the first three elements to establish her prima facie case: she is over 40, she suffered an adverse job action, and was qualified for her position."

13

Plaintiff further argues that "[she] has pleaded that despite numerous reports to Zink that Ocampo and Perry (both younger) were refusing to give her assistance; excluding her; and denying her equal, sufficient, and adequate training, including with regard to changes in the computer system; Zink refused to take action and commented that Plaintiff was 'thick-skinned' and should take such discrimination and abuse." She also alleges that she overheard Ocampo and Perry complaining to Zink about her abilities. Further, plaintiff alleges that prior to Ocampo and Perry's complaints about her, she had a good relationship with Zink, and that after their complaints, Zink "subjected her to hyper-criticism and hyper-scrutiny." Based on this backdrop, plaintiff states that Zink told her to "focus on learning the computer system." She argues that this shows "Zink's stereotyping prejudice and that he credited the word of Ocampo and Perry with regard to her abilities." Zink then allegedly terminated plaintiff telling her she was "not right" for the job even though she was not previously disciplined and was not given any prior notice of poor performance.

The court finds that plaintiff fails to plausibly allege the fourth element of her age discrimination claim. "To plausibly allege the fourth element, [i.e., the adverse employment action occurred under circumstances that could give rise to an inference of intentional discrimination"], the complaint may either: (1) allege that 'similarly situated employees who ... were not members of the same protected class ... were treated more favorably under similar circumstances' or (2) allege facts that 'otherwise show[] a causal nexus

between [the employee's] membership in a protected class and the adverse employment action.'" Drummer, 286 F.Supp. 3d at 681 (citations omitted). Plaintiff fails to allege facts that would give rise to an inference of intentional age discrimination regarding Zink's directive to "focus on learning the computer system." Nor does plaintiff allege that "similarly situated employees" who were younger than 40 "were treated more favorably under similar circumstances." Indeed, "evidence that the employer treated similarly situated employees outside of the plaintiff's protected class is circumstantial evidence of pretext ...." Simpson v. Kay Jewelers, 142 F.3d 639, 645 (3d Cr. 1998).

Further, plaintiff does not allege facts that show a causal nexus between her membership in a protected class as a 60-year old employee and her termination. As in Drummer, id. at 682, "[plaintiff] does not allege any facts to support [her] general claim that [she] was [ ] terminated because of [her] age, ..., rather than problems with [her] performance." For instance, plaintiff does not allege any facts to show that she learned the defendant's computer system and that Zink's instruction to learn the system was unwarranted. In short, as to the fourth element, plaintiff has not alleged sufficient facts to show an inference that Zink's employment decision to terminate her was based on her age. Additionally, it is of no moment that plaintiff alleges she was terminated despite the fact that she was not previously disciplined and was not given any prior notice that her performance was inadequate. In Williams v. Wells Fargo Bank, 2015 WL 1573745, at *9 (E.D.Pa. Apr. 9, 2015), the could held that defendant's failure to impose progressive discipline would not

15

serve as evidence of pretext in a discrimination case unless "a progressive disciplinary policy is 'mandatory or rigorously followed.'" (quoting Emmett v. Kwik Lok Corp., 528 Fed.Appx. 257, 262 (3d Cir. 2013)). Plaintiff does not allege that defendant had such a disciplinary policy.

Thus, the court will grant defendant's motion to dismiss plaintiff's age discrimination claim in Count II of her amended complaint since her allegations fail to state a claim under the ADEA. Also, since plaintiff has already amended her complaint once and failed to correct the deficiencies regarding her age discrimination claim from her original pleading, the court will dismiss this claim without leave for further amendment based on futility and undue prejudice to defendant. *See* Alston v. Parker, 363 F.3d 229, 236 (3d Cir. 2004) ("Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility.").

### C. Common Law Wrongful Discharge Claim

In Count III, plaintiff raises a common law wrongful discharge claim alleging that her termination was in violation of Pennsylvania public policy. In her amended complaint, plaintiff alleges that the state Banking Code and Securities Act show there is a public policy "to cooperate with, not obstruct and be truthful to state investigations and auditors." In her brief in opposition to defendant's motion, plaintiff argues that the court should recognize that Pennsylvania has a "public policy encouraging an employee to participate in an audit mandated by statute" since there is a "virtual unanimity of opinion"

16

regarding such a policy. (Doc. 11 at 13).

Initially, as defendant recognizes, to the extent plaintiff attempts to add a new public policy to her wrongful discharge claim in her brief in opposition, namely, that employees should participate in audits required by statute, "[i]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." Heim v. York Cnty. Prison, 2013 WL 1414638 (M.D.Pa. Apr. 8, 2013)(citing Pennsylvania ex rel. Zimmerman v. Pepsico, Inc., 836 F.2d 173, 181 (3d Cir. 1988)). The court has thus not considered plaintiff's new alleged public policy.

Defendant also argues that the amended complaint fails to allege a legally sufficient claim of wrongful termination based on Pennsylvania public policy. The general rule in Pennsylvania is that no common law cause of action exists against an employer for termination of an at-will employee. Weaver v. Harpster, 975 A.2d 555, 562 (Pa. 2009). In fact, "Pennsylvania has an 'extremely strong' presumption that all non-contractual employment relationships are at-will." Beck v. CNO Financial Group, Inc., 2018 WL 2984, *2 (E.D.Pa. June 14, 2018) (citing McLaughlin v. Gastrointestinal Specialists, Inc., 750 A.2d 283, 287 (Pa. 2000)). "Exceptions to this rule have been recognized in only the most limited of circumstances, where discharges of at-will employees would threaten clear mandates of public policy." Clay v. Advanced Computer Applications, Inc., 559 A.2d 917, 918 (Pa. 1989). *See also* Donahue v. Federal Express Corp., 753 A.2d 238, 244 (Pa.Super.Ct. 2000) (Superior Court held that an employer may be held liable for terminating

17

an employee in violation of Pennsylvania's "public policy"). Courts are to look to the Commonwealth's Constitution, court decisions, and statutes to determine Pennsylvania public policy. Weaver, 975 A.2d at 563. However, Pennsylvania public policy is not to be ascertained "from supposed public interest." Shick v. Shirey, 716 A.2d 1231, 1237 (Pa. 1998).

The Third Circuit has explained that, although the perimeters of the narrow public policy exceptions have not been precisely defined, three limited circumstances have been recognized in which public policy will trump employment at will. Spyridakis v. Riesling Group, Inc., 398 Fed. App'x 793, 798-99 (3d Cir. 2003). The Court set forth those circumstances as follows: "[A]n employer (1) cannot require an employee to commit a crime, (2) cannot prevent an employee from complying with a statutorily imposed duty, and (3) cannot discharge an employee when specifically prohibited from doing so by statute." Id.

Recently, in Gillispie v. RegionalCare Hospital Partners Inc., 892 F.3d 585, 597 (3d Cir. 2018), the Third Circuit stated that "[w]e have previously determined that Pennsylvania law does not recognize a common law cause of action for violating public policy if a statutory remedy exists." The Court stated that as "[it] explained in Wolk v. Saks Fifth Ave., Inc., [728 F.2d 221, 224 n. 3 (3d Cir. 1984)] 'the availability of a [statutory] remedy precludes other common law remedies even where the statute is not invoked."

Since the Pennsylvania Department of Banking and Securities Code, 71 P.S. ¶733-1204, the Pennsylvania Banking Code of 1965, 7 P.S.

§§101–2204, and the Pennsylvania Securities Act of 1972,[2] 70 P.S. ¶1-510, provided plaintiff with statutory remedies to report the alleged improper conduct and violations of the Banking Code and Securities Act Zink allegedly committed on behalf of the defendant to the state auditors, her common law wrongful discharge claim for violation of public policy will be dismissed. *See* Gillispie, 892 F.3d at 597 ("Although [plaintiff's] wrongful discharge claims are cloaked in the rhetoric of public policy, they are clearly prohibited as common

─────────────

[2]Section 733-202 of the Department of Banking and Securities Code provides that:

> the Department shall enforce and administer all laws of this Commonwealth which relate to any institution, and shall exercise such general supervision over institutions as will afford the greatest possible safety to depositors, other creditors, and shareholders thereof, ensure the safe and sound conduct of the business of such institutions, conserve their assets, maintain the public confidence in such institutions and protect the public interest.

Section 733-401 of the Department of Banking and Securities Code provides that when an officer, shareholder, director or member of an institution it supervises requests an investigation of the institution, the Department has the discretion to conduct an investigation, including the power to issue subpoenas.

Section 510(a) of the Securities Act gives the Pennsylvania Securities Commission the power to "make such public or private investigations within or without this State as it deems necessary to determine whether any person has violated or is about to violate this act or any rule or order hereunder . . .."

Section 103(a) of the Banking Code gives the Department of Banking the power to regulate banks and institutions covered by the Code.

Additionally, "the Department of Banking, through its examiners, has had unlimited auditing, investigating, and inquisitorial powers in respect to every state bank in the State." Stahl v. First Pa. Banking & Trust Co., 411 Pa. 121, 131, 191 A.2d 386, 392 (1963).

law claims for violation of public policy because she could have brought them under Pennsylvania's [Banking Code and Securities Act].").[3]

In fact, in her amended complaint, (Doc. 7 at ¶'s 88 & 95), plaintiff admits that "as part of her ethical responsibilities and as required both by law and bank policies, [she] was required and obligated to disclose any ethical, conflict of interest, rule or regulatory violation or any such suspected violation", and that "[she] was under an ethical duty and required both by law of Pennsylvania and Bank policy, to report any suspected improper conduct or concerns regarding same including as to any financial, accounting, internal ethical conduct procedures and controls, and/or related to any auditor matter in which the State Department of Banking and Securities had an interest ...." Plaintiff also admits that she was employed by defendant for most of the week of July 17, 2017 when the state auditors were present. Thus, despite the fact that plaintiff alleges "[o]n July 20, 2017, the day before [she] was to have her audit exit interview [with state auditors]" Zink terminated her to prevent her from speaking with the auditors, plaintiff, as a Trust Officer, was still obliged

---

[3]Section 733-1104 of the Department of Banking and Securities Code provides that:

[n]o licensee may discharge, threaten or otherwise discriminate or retaliate against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because the employee is requested by an appropriate authority to participate in an investigation, hearing or inquiry held by an appropriate authority or in a court action relating to a violation of law.

to report Zink's alleged improper investment decisions he told plaintiff that he was making for the defendant's trust and individual clients.

Therefore, defendant's motion to dismiss plaintiff's common law wrongful discharge claim will be granted. Because the plaintiff has already had the opportunity to amend her complaint and because any amendment would be futile, dismissal of the stated claim will be with prejudice. *See* Alston, 363 F.3d at 236.


## III. CONCLUSION

Based on the foregoing reasons, the court will **DENY** defendant's motion to dismiss, (Doc. 9), plaintiff's disability discrimination claim under the ADAAA in Count I of her amended complaint, (Doc. 7), and, this claim will **PROCEED**. The court will **GRANT** defendant's motion to dismiss plaintiff's age discrimination claim under the ADEA in Count II of her amended complaint, and this claim will be **DISMISSED WITH PREJUDICE**. Defendant's motion to dismiss plaintiff's common law wrongful discharge claim, Count III, will be **GRANTED**, and this claim will be **DISMISSED WITH PREJUDICE**. An appropriate order shall issue.


s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: July 10, 2019**
18-1340-01.wpd

21